Affirmed and Majority and Concurring Opinions filed July 10, 2003









Affirmed and Majority and Concurring Opinions filed
July 10, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00480-CV

____________

 

TOM
W. FETTER ON BEHALF OF HIMSELF and

ALL OTHER SIMILARLY SITUATED INDIVIDUALS IN TEXAS, Appellant

 

V.

 

WELLS
FARGO BANK TEXAS, N.A., f/k/a NORWEST BANK TEXAS, N.A., and WELLS FARGO
SERVICES, INC., f/k/a NORWEST SERVICES, INC., Appellee

 



 

On Appeal from the
268th District Court

Fort
Bend
County, Texas

Trial Court Cause
No. 113,790

 



 

C O N C U R R I N G    O P I N I O N








I agree completely with the majority opinion.  I write only to explain the differences
between  this case and another U.C.C.
case recently issued by this court, in which we held that a fact issue existed
on whether a party acted in good faith in setting an “open price term.”  See HRN, Inc. v. Shell Oil Co., 102
S.W.3d 205 (Tex. App.CHouston [14th Dist.] 2003, n.p.h.); Tex. Bus. & Com. Code Ann. ' 2.305.  In HRN, lessee dealers of Shell
alleged that Shell was charging them unreasonably high prices for gasoline, and
that it did this with the intent of running them out of business.  Id. at 211.  Shell defended, claiming that it charged its
dealers a price comparable to those charged by its competitors.  Id.

Relying on a U.S. Circuit Court opinion from the Fifth
Circuit that involved nearly identical facts and issues, we held that, even
though Shell’s price might be comparable to its competitors’, Shell was
required to set the price in good faith, and that a fact issue existed on that
point.  Id. at 215.  In reaching this conclusion, we relied on the
plain language of section 2.305 and on the official U.C.C. comment to the
section.  Id. at 211B215. 
The plain language of section 2.305(b) requires that an open price termCdescribed as a “price to be fixed by
the buyer or seller”Cmust be fixed in good faith. 
Id. at 211.  The comment to
section 2.305 states that normally a “posted price” or “market price” will
satisfy the good faith requirement, but, it noted that whatever price is set
must be set in good faith.  Id. at
212.  The dealers in HRN presented
some evidence by which a jury could conclude that ShellCallegedly desiring to switch to
Shell-owned gas stationsCwas setting its price to force its dealers out of
business.  Id. at 214B15. 
As a result, we found a fact issue existed and remanded the case for
further proceedings or a trial. 

This case is very different from HRN, and that is why
we have held that no fact issue exists, even though we held one existed in HRN.  There are several ways the cases are
different.

First, the U.C.C. sections themselves differ.  Section 4.303, at issue here, expressly
allows a bank to post checks in any order. 
Although the U.C.C. section in HRN allowed parties to use “open
price terms,” it required that the terms be set in good faith.  No such requirement exists in section 4.303.








Second, the official U.C.C. comments for the two sections are
very different.  The comment for 4.303
expressly notes that no priority rule for paying checks is stated in the
section and that it would be impossible to state a rule that was fair in all
cases.  Tex.
Bus. & Com. Code Ann. ' 4.303 cmt. 7 (Vernon 2002).  The comment acknowledges the futility of
choosing a priority system that is fair to all, and so it acknowledges that any
order is acceptable, acknowledging also that the drawer should have funds
available for all the checks written.  In
contrast, the U.C.C. comment involved in HRN did not approve of all
price settings; it approved only of those set in good faith.  Thus, consideration of good faith is part and
parcel of the U.C.C. comment for section 2.305 (in HRN), but not in
4.303 (this case).  Although the State
Bar Comment to 4.303 does attempt to add good faith consideration into section
4.303, as we note in the majority opinion, our legislature did not approve that
language, and we do not find it persuasive. 
And, in fact, a plain reading of section 4.303 would lead one to believe
that good faith is not part of the equation.

The final difference
between the two cases lies in the relationships between the parties and the
control Fetter and the dealers exercised over their fates.  Here, FetterCthe
drawer/plaintiffCwas
on notice through his contract with the bank that it could pay checks in order
of highest to lowest.  If he did not like
that system, he could choose to take his business to another bank.  In addition, the fees were only charged if
Fetter did not have enough money in the bank to cover the checks he had
written.  Unlike Fetter, the dealers in HRN
alleged that they were captive buyers who were required by contract to buy gas
from Shell.  Moreover, unlike Fetter, who
was partly responsible for the fees he had to pay, the dealers did not control
whether they incurred ill effects from Shell=s
alleged bad acts.

In short, the majority
opinion is correct.  Unlike HRN,
neither the applicable U.C.C. provisions nor the parties’ agreement may be read
to impose a duty of good faith on Wells Fargo’s check-posting practices.

 

/s/        Wanda McKee Fowler

Justice

 

 

Judgment
rendered and Majority and Concurring Opinions filed July 10, 2003.

 

Panel consists of Justices Anderson,
Fowler, and Seymore.  (Anderson, J.
majority.)